# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF KENTUCKY
# OWENSBORO DIVISION

| | |
|---|---|
| APRIL NEVITT and JUSTIN NEVITT, on Behalf of Themselves and All Others Similarly-situated, | ) ) ) ) |
| Plaintiff, | ) **PROPOSED COLLECTIVE ACTION** ) ) CASE NO. 4:18-CV-126-JHM |
| v. | ) ) |
| CARHARTT, INC. | ) **JURY DEMANDED** ) |
| Defendant. | ) ) ) |

## COMPLAINT

1. Come Plaintiffs April Nevitt and Justin Nevitt (hereinafter collectively referred to as "Plaintiffs"), on behalf of themselves and all others similarly-situated, and bring this collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq*. ("FLSA") against Defendant Carhartt, Inc. (hereafter, "Defendant"), which is engaged in the business of selling jackets and other clothing (and operates distribution facilities, including one in Hanson, Kentucky, which is hereafter referred to as the "Hanson Facility," for the purpose of distributing Defendant's clothing products), and which employs "pickers" and other non-exempt employees at several locations around the country (including at the Hanson Facility), for violations of Defendant's statutory obligation to pay employees overtime for all work performed by employees in excess of forty hours per week. Specifically, Defendant has willfully engaged in the practice of intentionally not paying its employees for any time worked in the ten minutes after the scheduled end of each shift.

## JURISDICTION AND VENUE

2. This Court has jurisdiction over the claims of Plaintiffs and those similarly-situated pursuant to 28 U.S.C. §§ 1331 and 1337, and 29 U.S.C. § 216(b).

3. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b) because Defendant operates a facility located in the Western District of Kentucky, in Hanson, Hopkins County, Kentucky (the "Hanson facility") and employed Plaintiffs at that facility and thus Defendant conducts business and can be found in the Western District of Kentucky.

## PARTIES

4. Plaintiffs are residents of Hopkins County, Kentucky.

5. Plaintiffs are current employees of Defendant and have worked for Defendant as a "picker"[1] at the Hanson facility. Plaintiff Justin Nevitt has worked for Defendant as a "picker" from January, 2015 to the date of filing this action (Plaintiff Justin Nevitt was previously employed from May, 2014 until January, 2015 in another non-exempt position). Plaintiff April Nevitt has worked for Defendant as a "picker" from July 18, 2011 to the date of filing this action.

6. Throughout their employment with Defendant, Plaintiffs were at all times non-exempt employees of Defendant within the meaning of the FLSA. Specifically, the work of "picker" involves "picking" items from Defendant's inventory in the Hanson Facility, which is in essence a warehouse/distribution center, in order to compile each customer's order.

7. Plaintiffs bring this action on behalf of themselves and all similarly-situated current and former employees of Defendant who worked for Defendant within the last three years in any non-exempt position for which such employee's time was recorded using a timeclock.

---

[1] This job was colloquially referred to as "picker, but the actual title was Order Picker.

8. Defendant is a Michigan For-Profit Corporation with its principal office at 5750 Mercury Dr., Dearborn, MI 48121, and may be served by service upon CT Corporation System, 306 W. Main St., Suite 512, Frankfort, KY 40601, which Defendant has listed as its registered agent with the Commonwealth of Kentucky Secretary of State.

9. Defendant employs Plaintiffs and non-exempt employees similarly-situated to Plaintiff, including in its Hanson Facility.

10. The Hanson Facility in Hanson, Kentucky in Hopkins County, within the District of the United States District Court for the Western District of Kentucky.

11. Defendant's annual sales have, at all times relevant to this Complaint, exceeded $500,000.00.

12. At all times relevant to this Complaint, Defendant has regularly engaged in interstate commerce and was an employer within the meaning of the FLSA, 29 U.S.C. §§ 206-207.

## **FACTS**

13. Plaintiffs were employed as employees at the Hanson Facility operated by Defendant.

14. Defendant maintained a timeclock system for its employees at the Hanson Facility whereby employees are instructed to clock in upon arriving at Defendant's facility, and to clock out upon ending work.

15. The intended purpose of the timeclock system maintained by Defendant at the Hanson Facility (and, indeed, the purpose of such timeclock systems in general is) to enable the employer to accurately record each employee's actual hours worked so that the employer may pay the employee in accordance with such actual hours worked, including overtime pay, if earned in a particular work week.

16. However, Defendant perverted the purpose of its timeclock system in order to illegally use the timeclock system to systematically deprive its workers of pay (including overtime pay) for work (including overtime work) performed in the ten minutes following the scheduled end of each employee's shift.

17. Until January, 2018, Plaintiffs were scheduled to work five eight-hour shifts per week.

18. Accordingly, because Plaintiffs were already scheduled to work forty hours per week, if Plaintiffs worked their scheduled shifts and stayed over after the end of their scheduled shift on even one day per week, then Plaintiffs would be entitled to overtime pay for the additional work performed after the end of the scheduled shift.

19. Defendant knew that it was required to pay Plaintiffs and similarly-situated employees overtime pay for hours worked in excess of forty per week.

20. However, despite this knowledge, Defendant intentionally chose to program its timeclock system to avoid payment of overtime pay for overtime work that Plaintiffs and similarly-situated employees actually performed.

21. Defendant programs its timeclock to allow employees to clock in early. However, employees are not paid until the scheduled beginning of their shift. Plaintiffs are not seeking relief in this action relating to the non-payment of time between when in employee clocks in and the scheduled beginning of the shift because employees are not required to begin work until the beginning of their shift; however, this aspect of the time clock system is explained here because Defendant programs its timeclocks to perform a similar, but illegal function at the end of shifts.

22. Specifically, if an employee works past the scheduled end of the employee's shift and then clocks out, but clocks out between the scheduled end of the employee's shift and ten (10)

minutes past the scheduled end of the employee's shift, for purposes of paying the employee for time worked, Defendant programmed its time clock system to automatically treat the employee as if the employee had stopped working and clocked out at the scheduled end of the shift (and not at the actual time the employee clocks out).

23. This occurs despite the fact that the employee performs work after the scheduled end of the shift and Defendant has an accurate measurement of the exact amount of time work is performed after the scheduled of the end of the shift (the time clock system is capable of recording, and, upon information and belief, actually does record, the exact time the employee clocks out).

24. Defendant knew that its policy was illegal and generally concealed from and failed to disclose to its employees the existence of this policy of not paying employees for time worked in the ten minutes following the scheduled end of shifts.

25. However, Plaintiff April Nevitt discovered the policy when, in the year 2017, she filed a grievance through her union regarding a practice that Defendant had regarding the end of Plaintiff April Nevitt's shift.

26. Specifically, although Plaintiff April Nevitt's shift was supposed to end at 2:00 p.m., Defendant had a policy or rule that Plaintiff April Nevitt could not leave the Special Handling section of Defendant's Hanson Facility prior to 1:58 p.m.

27. In order to complete all of her work, after leaving the Special Handling section, Plaintiff April Nevitt would have to go to two other sections of the Hanson Facility (the Picking Lockers and Wave Office) to return a scanner and printer that Plaintiff April Nevitt used in her work and which Defendant required Plaintiff April Nevitt to return every day.

28. Because it took longer than two minutes to (A) go from the Special Handling section of the Hanson Facility to the Picker Lockers to put away her scanner, (B) go to the Wave

Office, (C) wait in a line of other employees at the Wave Office to return her printer and (D) in fact return the printer, the effect of Defendant's rule was that Plaintiff April Nevitt, as a practical matter, was required to work past 2:00 p.m.

29. During the three years preceding the filing of this action, both Plaintiffs in fact worked past the scheduled end of their shift, then clocked out after the scheduled end of their shift but not more than ten minutes after the scheduled end of their shift, and were not paid for their work after the scheduled end of their shift; this occurred on weeks when, including this unpaid time, Defendant worked more than forty hours in the work week, and, accordingly, each Plaintiff was actually deprived of overtime pay by Defendant's policy.

30. At the time of making the grievance through her union, Plaintiff April Nevitt was not aware that she was being treated as if she had stopped working at 2:00 p.m. every day and was not seeking in the grievance to be paid for the additional time.

31. Instead, the purpose of Plaintiff April Nevitt's grievance was that she is a mother and wanted to be able to leave the Hanson Facility promptly at 2:00 p.m. in order to be able to travel to her children and pick up her children on time. In other words, the purpose of the grievance was to seek to ensure that Plaintiff April Nevitt was able to meet her childcare obligations.

32. Defendant responded to Plaintiff's grievance by, through its management, acknowledging that it took longer than two minutes for Plaintiff April Nevitt to (A) go from the Special Handling section of the Hanson Facility to the Picker Lockers to put away her scanner, (B) go to the Wave Office, (C) wait in a line of other employees at the Wave Office to return her printer and (D) in fact return the printer.

33. Defendant's management told Plaintiff April Nevitt that Defendant was not willing to allow Plaintiff April Nevitt to leave the Special Handling area prior to 1:58 p.m., but stated that

Plaintiff April Nevitt could, for any particular day, if she worked past 2:00 p.m., be paid for the additional time worked past 2:00 p.m. if she located her supervisor and requested that her pay reflect her actual clock out time.

34. At the time of explaining this "resolution" of the grievance to Plaintiff April Nevitt, Defendant's management also explained to Plaintiff that, unless Plaintiff followed this procedure of daily seeking out her supervisor to request that she be paid for her work actually performed, because of the Defendant's policy of automatically treating employees as having stopped work at the scheduled end of their shift when employees clock out between the scheduled end of their shift and ten minutes after the scheduled end of their shift, Plaintiff's pay would only reflect work until 2:00 p.m. if Plaintiff worked after 2:00 p.m. but clocked out prior to 2:10 p.m.

35. Although the "resolution" of the grievance involved an acknowledgement that Plaintiff April Nevitt had worked overtime work but not been paid overtime pay for that work, Defendant did not, in response to Plaintiff's grievance, pay Plaintiff April Nevitt overtime pay for the time she had worked past the scheduled end of her shift but not been paid for such work (Plaintiff April Nevitt was regularly scheduled to work forty hours per week at this time and, therefore, any additional work after the scheduled end of her shift would be overtime work).

36. Upon information and belief, Defendant did not propose paying Plaintiff April Nevitt for such unpaid overtime work because the nonpayment of overtime pay was not an error or mistake from Defendant's standpoint, but the exact purpose of the illegal policy of not paying for work in the ten minutes following the scheduled end of the shift.

37. Indeed, Defendant required its employees to work until the scheduled end of their shift, prohibited employees from clocking out early without special permission, and would discipline employees for clocking out early; however, Defendant did not prohibit employees from

working past the scheduled end of their shift and clocking out in the ten minutes after the scheduled end of their shift.

38. Accordingly, far more employees would clock out in the ten minutes after the scheduled end of their shift than would clock out in the ten minutes before the scheduled end of the shift, and Defendant knew that its policy (of treating employees working in the ten minutes after the scheduled end of the shift as having stopped working at the scheduled end of the shift) could not be justified under a "rounding" theory (i.e., a theory that rounding the amount of time performed to the nearest third of an hour would result, over the course of all such roundings, in employees being paid on average for the actual amount of work performed).[2]

39. Indeed, upon information and belief, Defendant did not "round" at all when employees would clock out early. Thus, an employee clocking out at 4:54 p.m. prior to a scheduled 5:00 p.m. end of shift would, in addition to being subject to discipline, not be paid for the six minutes between 4:54 and 5:00, and, likewise, an employee clocking out at 4:58 p.m. would, in addition to being subject to discipline, not be paid for the two minutes between 4:58 and 5:00.

40. Because, upon information and belief, Defendant's computer system recorded the exact times that Plaintiffs and those similarly-situated clocked out, the exact amount of pay which Defendant failed to pay its employees' overtime work could be (and will through this location be able to be) precisely calculated from Defendant's own records.

41. As a result of Defendant's illegal policy, Plaintiffs and others similarly situated to Plaintiffs performed overtime work in the three years preceding the filing of this action but were not paid overtime pay for such work.

---

[2] Like Plaintiffs, numerous other similarly-situated employees would (A) work after the scheduled end of their shift, (B) clock out after the scheduled end of their shift but before ten minutes after the scheduled end of their shift, (C) do so in weeks when such employees worked more than forty hours in the workweek, including the work after the scheduled end of the shift and (D) not be paid for such work after the scheduled end of their shift.

42. This unlawful conduct by Defendant has been widespread, repeated and consistent with respect to Plaintiffs and similarly-situated employees (i.e., those employees who are non-exempt and who, in any workweek in the last three years, who worked more than forty hours in a week, worked after and clocked out after the scheduled end of their shift during such week, but were treated by Defendant as having only worked until the scheduled end of their shift).

43. Plaintiffs bring this action against Defendant because Defendant has willfully engaged in a pattern and practice of unlawful conduct by declining to record and pay for all of the time it requires or permits its members of the proposed class to work, in violation of the FLSA.

44. Defendant knew or should have known that its supervisory and management personnel permit or require Plaintiffs and other members of the proposed class to perform work which is for the benefit of Defendant, and which is integral to Defendant's business, without appropriate compensation, including time in connection with the unlawful practices described above.

45. The conduct of Defendant, set forth above, has been willful, in bad faith, and has caused significant damages to Plaintiffs and other members of the proposed class.

**COLLECTIVE ACTION ALLEGATIONS**

46. Plaintiffs bring this action on behalf of themselves and the following proposed class of similarly-situated employees:

> all current and former employees of Carhartt, Inc. who have, while employed by Carhartt, Inc in the United States at any time from the date three years prior to the filing of this action (i.e., at any time from August 2, 2015 to August 2, 2018), worked for Defendant in any workweek (A) in any position that is non-exempt under the FLSA, (B) more than forty hours in such workweek, and (C) on one or more days during such workweek worked after the scheduled end of such worker's shift for such day and clocked out after the scheduled end of the shift but not more than ten (10) minutes after the scheduled end of such worker's shift for such day, and who have not been fully compensated for such overtime hours worked in violation of the FLSA.

47. The employment policies, practices and agreements of Defendant raise questions of fact common to the class including:

 a. whether Defendant has engaged in a pattern or practice of permitting or requiring Plaintiffs and members of the proposed class to work in excess of forty hours per workweek for the benefit of Defendant and without appropriate compensation, in violation of the FLSA;

 b. whether Defendant has engaged in a pattern or practice of failing to keep accurate records showing all hours worked by Plaintiffs and members of the proposed class, in violation of the FLSA;

 c. whether the conduct of Defendant was willful;

 d. whether Plaintiffs and members of the proposed class are entitled to lost wages, liquidated damages and the other relief requested.

48. The claims of the named Plaintiffs are similar to those of the proposed class members, in that Plaintiffs have been subject to the same conduct as members of the putative collective action and Plaintiffs' claims are based on the same legal theory as members of the collective action.

49. Plaintiff's FLSA claims are maintainable as a collective action pursuant to Section 16(b) of the FLSA, 29 U.S.C. § 216(b). Plaintiff's consent to join this action is attached hereto as Exhibit 1.

## **VIOLATION OF FLSA – NONPAYMENT OF OVERTIME – PLAINTIFFS AND THOSE SIMILARLY-SITUATED**

50. Plaintiffs incorporates by reference all preceding paragraphs as if the same were set forth again fully at this point.

51. Defendant has willfully violated the FLSA by engaging in a pattern or practice (or patterns or practices) of:

    a.    failing to keep accurate records showing all the time it permitted and/or required Plaintiffs and members of the proposed collective action to work, from the first compensable act to the last compensable act, which has resulted in the denial of compensation at an overtime rate as required by the FLSA, for all time worked in excess of forty hours in a work week; and

    b.    permitting and/or requiring Plaintiffs and members of the proposed collective action to perform integral and indispensable activities (work) after the scheduled work time, and in addition to working forty hours in a work week, for the benefit of Defendant and without compensation at the applicable federal overtime rates.

52. As a result of Defendant's violations of the FLSA, Plaintiffs and those similarly-situated to them suffered damages, including their lost overtime, for which they should be awarded compensatory damages, liquidated damages, and attorney's fees and other reasonable litigation expenses.

## **PRAYER FOR RELIEF**

Wherefore, Plaintiffs pray that the Court:

A.    Issue process and bring Defendant before the Court;

B.    Authorize notice to issue to members of the proposed collective action and permitting similarly-situated persons a reasonable opportunity to join this litigation with respect to claims under the FLSA;

C.    Empanel a jury for the trial of all issues of fact;

  D. Enter a judgment awarding Plaintiffs and similarly-situated persons joining this litigation damages from Defendant, including compensation for unrecorded work time, interest, and liquidated or exemplary damages, in amounts to be proven at trial;

  E. Award Plaintiffs and similarly-situated persons joining this litigation all costs of litigation, including expert fees and attorneys' fees;

  F. Grant Plaintiffs and similarly-situated persons joining this litigation all costs of litigation such other further and/or general relief, legal and/or equitable relief, to which they are entitled or which the Court otherwise deems appropriate.

         Respectfully submitted,

         /s/ Mark N. Foster
         Mark N. Foster
         Law Office of Mark N. Foster, PLLC
         P.O. Box 869
         Madisonville, KY 42431
         (270) 213-1303
         MFoster@MarkNFoster.com
         *Counsel for Plaintiffs April Nevitt and Justin Nevitt*